**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Bultemeyer and Steven Perez, Jr., | No. CV-12-2619-PHX-LOA |
| Plaintiffs, | **ORDER** |
| vs. | |
| Fitness Alliance, LLC, d/b/a Gold's Gym - Phoenix Downtown, an Arizona limited liability company, | |
| Defendant. | |

This lawsuit is before the Court on the parties' cross-motions for summary judgment predicated upon a joint Stipulated Statement of Facts in Support of all Parties' Respective Cross-Motions for Summary Judgment ("SSOF"). (Docs. 31-33) All parties have consented to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 16)

Plaintiffs Lydia Bultemeyer and Steven Perez, Jr. ("Plaintiffs"), former members of Gold's Gym in downtown Phoenix, Arizona, seek summary judgment on their action for statutory damages against Defendant Fitness Alliance, LLC d/b/a Gold's Gym - Phoenix Downtown ("Fitness Alliance") on the basis that Fitness Alliance's membership agreements violated the Electronic Fund Transfer Act's ("EFTA") notice requirements, 15 U.S.C. § 1693(e)(b), and Regulation E, 12 C.F.R. §§ 205.10(b)(1), 1005.10(d), and its anti-waiver provision, 15 U.S.C. § 1693l. (Docs. 1, ¶¶ 29-31; 31 at 1)  Conversely, Fitness Alliance moves for summary judgment, claiming its membership agreements with Plaintiffs did not violate the EFTA, but, assuming *arguendo* it did, Fitness Alliance is entitled to summary

1  judgment pursuant to the EFTA's bona fide error defense, 15 U.S.C. § 1693m(c), which
2  would bar Plaintiffs' recovery.[1] This District Court has subject matter jurisdiction over this
3  action pursuant to 15 U.S.C. § 1693m(g) and 28 U.S.C. § 1331.

4  After considering the parties' briefings, relevant authorities, and the file as a whole,
5  the Court finds that it is unnecessary to address the bona fide error defense as Fitness
6  Alliance's membership agreements did not violate the EFTA. The Court will grant
7  Defendant Fitness Alliance's Motion for Summary Judgment, deny Plaintiffs' Motion for
8  Summary Judgment, and terminate this action. Because the parties' briefing is adequate and
9  oral argument would not aid the Court, the Court will deny Defendant Fitness Alliance's
10 request for oral argument. *Mahon v. Credit Bur. of Placer County, Inc*., 171 F.3d 1197,
11 1200 (9th Cir. 1999); *Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp*.,
12 933 F.2d 724, 729 (9th Cir. 1991).

13 **I. Background**

14 The material facts in this action are not disputed. Plaintiffs joined Gold's Gym in
15 downtown Phoenix by signing Fitness Alliance's standard, minimum one-year membership
16 agreement on December 9, 2011, and commencing their membership that same day. (Docs.
17 33, SSOF, ¶ 1; 1 Exhibits ("Exhs.") A and B) Plaintiffs' gym membership agreements
18 authorized Fitness Alliance to 1) electronically debit Plaintiffs' membership dues of $18.00
19 every two weeks from Plaintiffs' joint checking account, for a minimum of 12 months,
20 beginning on January 27, 2012[2]; 2) debit a $15.00 facility improvement fee twice a year,

---

[1] "The bona fide error defense provides that 'a person may not be held liable . . . if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" *In re Cardtronics ATM Fee Notice Litig*., 874 F.Supp.2d 916, 922 (S.D. Cal. 2012) (quoting 15 U.S.C. § 1693m(c)).

[2] It appears that the parties' Stipulated Statement of Facts in Support of all Parties' Respective Cross-Motions for Summary Judgment contains a drafting error, indicating Plaintiffs' EFT's began on "January 27, 2011." (SSOF, ¶ 6) If Plaintiffs' membership began on December 9, 2011, the EFTs must have begun in January 27, 2012, which is confirmed by each membership agreement. (Docs. 1-1, Exh. A at 2; 1-2, Exh. B at 2)

- 2 -

with the January and July dues; and 3) re-submit an auto-debit for any of the regularly scheduled payments described in 1 or 2, plus a $25 service fee, in the event a preauthorized fee or other charge was rejected by Plaintiffs' bank due to insufficient funds in their checking account. (SSOF, ¶¶ 6-8) Plaintiffs terminated their Gold's Gym membership after one year. (*Id.*, ¶ 10) It is undisputed that Fitness Alliance never debited Plaintiffs' account for a fee or charge other than the pre-authorized $18.00 biweekly membership dues and the biannual $15.00 facility fee described above. (*Id.*, ¶ 11) During Plaintiffs' memberships in Gold's Gym, there was never an auto-debit charge from Plaintiffs' account that was either returned due to insufficient funds ("nsf") or rejected for any other reason by Plaintiffs' bank. (*Id.*)

The parties have stipulated that Plaintiffs are "consumers," as defined by 15 U.S.C. §1693(a), and Fitness Alliance is both a "person" and a "designated payee" within the meaning of the EFTA. (*Id.*, ¶¶ 3-5) Fitness Alliance does not dispute that its membership agreements with Plaintiffs authorized "electronic funds transfers"[3] ("EFTs") that were "preauthorized electronic fund transfer[s]," as defined by 15 U.S.C. § 1693a(10), and Plaintiffs' bank account was an "account" within the meaning of 15 U.S.C. § 1693a(2). (Doc. 1, ¶¶ 17-18)

The relevant terms of Fitness Alliance's membership agreement which Plaintiffs claim violated the EFTA reads as follows:

> **VERY IMPORTANT**: If Member changes the dues account Member must bring in new account information (a voided check or credit card voucher) at least thirty-one (31) days prior to the upcoming payment date. In the event sufficient funds are not available in Buyer's account or debits are otherwise not accepted, Gold's Gym may resubmit the charge prior to the next scheduled draft date. If the resubmittal is returned uncollected, the rejected amount plus a $25 service charge will be added to Buyer's next regularly scheduled debit. Buyer understands that Buyer is entitled to notice of all varying charges and withdrawals under the EFT, but Buyer waives the right to receive prior notice

---

[3] The EFTA defines an "electronic fund transfer" as "any transfer of funds . . . which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7).

> for charges or withdrawals made with respect to any uncollected monthly dues payments or portions of the balance due described above and the corresponding service charges, both of which Buyer agrees are not varying charges or withdrawals. Gold's Gym reserves the right to charge a fee of 18% per annum on all delinquent payments.

(SSOF, ¶ 9)

On December 7, 2012, Plaintiffs filed this action, alleging Fitness Alliance violated the EFTA, through its membership agreements with Plaintiffs, by: 1) making preauthorized electronic funds transfers (debits) which varied in amount, and not providing Plaintiffs with the minimum ten days' advance written notice of the amount and date of the EFT before the scheduled date of transfer, contrary to 15 U.S.C. § 1693e(b) and 12 C.F.R. § 205.10(c)(1) (Count I); and 2) inserting waivers of Plaintiffs' rights under the EFTA and its regulations, in violation of 15 U.S.C. § 1693l, the EFTA's "anti-waiver" provision (Count II). (Docs. 1, 13 at 3) Plaintiffs seek statutory damages, costs of suit, and reasonable attorney's fees. *See* 15 U.S.C. § 1693m(a).[4] (Doc. 1 at 8)  Plaintiffs have not incurred any actual damages as a result of the alleged violation of EFTA. (SSOF, ¶ 12)

Disputing the allegations in the Complaint and Plaintiffs' briefing arguments, Fitness Alliance contends that Plaintiffs' membership agreements clearly establish non-varying amounts for dues, fees, and late payments or insufficient fund charges that Plaintiffs could be charged (*e.g.*, $18.00 recurring dues every two weeks, a $15.00 semi-annual facility improvement fee, a late charge of $25.00 or 18% per annum (whichever is greater) of unpaid delinquent amount, and a service charge of $25.00). Because the amounts debited were fixed and never varied from the amounts identified in the membership agreements, Fitness Alliance argues it did not violate § 1693e(b) of the EFTA and advance written notice to Plaintiffs was not required before making the EFTs from Plaintiffs' bank account.

---

[4] For a violation of the EFTA by a non-financial institution, a prevailing consumer is entitled to recover "an amount equal to the sum of . . . any actual damage sustained by such consumer as a result of such [violation]; . . . [or] an amount not less than $100 nor greater than $1,000; . . . [plus] the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1693m(a).

1  Additionally, Fitness Alliance argues that Count II is without merit as the Plaintiffs'
2  membership agreements did not waive any of the EFTA's rights because the express terms
3  of the membership agreements authorized only non-varying amounts for the gym's dues,
4  fees, late payments, or insufficient fund charges to which Plaintiffs agreed to pay.

**II. Summary Judgment**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied his burden, he is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also* Rule 56, Fed.R.Civ.P. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

**III. The Electronic Fund Transfer Act**

In 1978, Congress enacted the Electronic Fund Transfer Act as part of the comprehensive Consumer Credit Protection Act (the "CCPA") codified as amended at 15 U.S.C. §§ 1601 *et seq*. *See Clemmer v. Key Bank Nat. Ass'n*, 539 F.3d 349, 350 (6th Cir. 2008). The EFTA, 15 U.S.C. §§ 1693 *et seq*., protects individual consumer rights by providing a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. *Id.* (quoting 15 U.S.C. § 1693(b) (quotation marks omitted)); *see also*, James Lockhart, J.D., *Validity, Construction, and Application of Electronic Fund Transfer Act, and Regulations Promulgated Thereunder, 15 U.S.C.A. §§ 1693 et seq*., 46 A.L.R. Fed. 2d 473 (2010). In addition to the EFTA, the CCPA includes several other consumer-protection statutes, including the Truth in Lending Act, 15 U.S.C. §§ 1601-1667f, and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x. "With the

1 common purpose of each statute to protect consumers with respect to financial credit, courts draw upon case law interpreting one statute for persuasive authority for another statute." *Clemmer* , 539 F.3d at 353. "The EFTA, like the TILA and other CCPA provisions, is a remedial statute accorded 'a broad, liberal construction in favor of the consumer.'" *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998) (citations omitted)); *see also Hauk v. JP Morgan Chase Bank United States*, 552 F.3d 1114, 1118 (9th Cir. 2009) ("To effectuate TILA's purpose, a court must construe 'the Act's provisions liberally in favor of the consumer' and require absolute compliance by creditors.").

The EFTA grants to the Board of Governors of the Federal Reserve System the authority and responsibility to "prescribe regulations to carry out the purposes" of the Act. 15 U.S.C. § 1693b(a). Civil liability for a violation of the EFTA arises when any person or legal entity fails to comply with the EFTA with respect to any consumer. *See* 15 U.S.C. § 1693m.

The EFTA provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a); *see also* Regulation E, 12 C.F.R. § 205.10(b). The terms "preauthorized electronic fund transfer means an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10). Thus, to qualify as a preauthorized transfer and trigger the requirements of the EFTA, the transfer must be one that is authorized to "recur." *See In re DirecTV Early Cancellation Litigation*, 738 F.Supp.2d 1062, 1091 (C.D. Cal. 2010) (because transfer must be "recurring" for § 1693e to apply, complaint dismissed as there were no allegations of recurring automatic payments in violation of EFTA); *Okocha v. HSBC Bank USA, N.A.*, 2010 WL 5122614, at *2 (S.D.N.Y. Dec. 14, 2010) (dismissing EFTA § 1693e claim because the preauthorized transfer was not set to occur at recurring intervals and the transfer between the account holder's bank accounts was not an electronic transfer covered by the EFTA).

Section 1693e(b) of the EFTA provides: "In the case of preauthorized transfers from a consumer's account to the same person *which may vary in amount*, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Bureau, of the amount to be transferred and the scheduled date of the transfer." 15 U.S.C. § 1693e(b) (emphasis added). The Federal Reserve's Regulation E establishes that "at least 10 days before the scheduled date of transfer" is reasonable notice. 12 C.F.R. § 1005.10(d). The clear purpose of this advance notice is to protect the consumer from unauthorized, fraudulent or erroneous transfers, which allows the consumer an opportunity to stop payment in accordance with the applicable laws and procedures established by the consumer's financial institution. *See Bank of America v. City and County of San Francisco*, 309 F.3d 551, 564 (9th Cir. 2002) (citing *Kashanchi v. Texas Commerce Med. Bank*, 703 F.2d 936, 940-41 (5th Cir. 1983) (citing H.R.Rep. No. 95–1315, at 2 (1978) (Congress passed the EFTA because of its concern that EFTs are "much more vulnerable to fraud, embezzlement, and unauthorized use than the traditional payment methods.")); *Hodes v. Vermeer Owners Inc*., 14 Misc. 3d 366, 369-70, 824 N.Y.S.2d 872, 875 (N.Y. City Civ. Ct. 2006).

The EFTA also prohibits any writing or other agreement between a consumer and financial institution or other legal entity "which constitutes a waiver of any right conferred or cause of action created by" the EFTA. 15 U.S.C. § 1693l.[5] This is commonly called the "anti-waiver" provision.

---

[5] Title 15 U.S.C. § 1693l provides as follows:

No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter. Nothing in this section prohibits, however, any writing or other agreement which grants to a consumer a more extensive right or remedy or greater protection than contained in this subchapter or a waiver given in settlement of a dispute or action.

## IV. Discussion

Simply stated, Fitness Alliance's membership agreements with Plaintiffs did not violate the EFTA. The clear and unambiguous terms of the parties' written agreements, on their face, deal only with fees and others charges specifically pre-authorized and identified in sum certain amounts and when each debit payment was due. The EFTA and the cases interpreting it are clear that identified fixed fees and other charges are simply not "varying" charges prompting the advance written notice required by § 1693e(b). Moreover, Fitness Alliance's membership agreements did not waive Plaintiffs' rights to the minimum 10-day, pre-debit notice of any fee or other charge because such fees and charges disclosed in Fitness Alliance's membership agreements with Plaintiffs do not qualify as varying charges under §1693e(b). In fact, Fitness Alliance's membership agreements confirm that Plaintiffs were "[e]ntitled to notice of all varying charges and withdrawals under the EFT, . . . ." (Docs. 1-1, Exh. A at 3; 1-2, Exh. B at 3) There is no evidence that there were any fees or other charges debited from Plaintiffs' account other than the fixed fees and charges identified in the membership agreements.

Because the plain terms in Fitness Alliance's membership agreements with Plaintiffs are clear and unambiguous, the agreement must be applied as written. *See Biltmore Bank of Arizona v. First Nat. Mortg. Sources, L.L.C.*, 2008 WL 564833, at *7 (D. Ariz. Feb. 26, 2008) ("Where the language of a contract is clear and unambiguous, it must be given effect as written.") (citation omitted). "The controlling rule of contract interpretation requires that the ordinary meaning of language be given to words when circumstances do not show a different meaning is applicable." *Id.* In order to determine the ordinary meaning of a word, courts often look to a dictionary definition of the term. *Id.* Merriam-Webster's Online Dictionary defines the word "vary" as meaning "to be different or to become different" or "to make changes to (something) so that it is not always the same." Merriam-Webster Online Dictionary, http:// www.merriam-webster.com/dictionary/vary (last viewed on February 18, 2014).

The undisputed evidence reflects that Fitness Alliance's fees and other charges were

both pre-authorized and identified in sum certain amounts that did not "become different" and remained the same during the term of the parties' contract. The gym's fees and other charges spelled out in the membership agreements were recurring $18.00 dues every two weeks, a $15.00 semi-annual facility improvement fee, a late charge of $25.00 or 18% per annum (whichever is greater) of unpaid delinquent amount, and a service charge of $25.00 if there were a delinquent payment. Fitness Alliance's gym membership fees and charges were constant, fixed, and did not vary, a fact that Plaintiffs acknowledged when they agreed to, and signed, the membership agreements, *viz*, "[B]uyer waives the right to receive prior notice for charges or withdrawals made with respect to any uncollected monthly dues payments or portions of the balance due described above and the corresponding service charges, *both of which Buyer agrees are not varying charges or withdrawals*." (SSOF, ¶ 9) (emphasis added).

Several federal district courts have addressed and rejected the same argument Plaintiffs raise herein regarding varying charges requiring advance written notice under § 1693e(b). In *Robins v. Global Fitness Holdings, LLC*, 838 F.Supp2d 631 (N.D. Ohio 2012), the district court held that auto-debiting the exact types of gym membership fees and charges at issue here does not require any additional advance notice under the EFTA, so long as they were specifically identified in the membership agreement. In *Robins*, numerous gym members sued a fitness club, alleging that, besides the actual monthly dues, the club had automatically debited from their bank accounts, without the proper EFTA advance notice, a payment of twice annual $15.00 facility management fee (identical to the membership agreement language here) and a $10.00 cancellation fee. There, the plaintiffs argued multiple theories of recovery, including a violation of § 1693e of the EFTA. The district court, however, was unpersuaded and dismissed with prejudice the EFTA claims, under Rule 12(b)(6), Fed.R.Civ.P., reasoning as follows:

> Plaintiffs contend that [the gym] violated the EFTA by making unauthorized electronic withdrawals of post-cancellation and other fees from their bank or credit card accounts without providing the advance notice required by statute . . . [The gym] argues that all EFT's were made in accordance with the Terms and Conditions of Plaintiffs' two-page Contracts.

\* \* \* \* \* \*

> With the exception of the unauthorized $1 added to the monthly withdrawals from the accounts of Plaintiffs Baker and Green, all EFTs were authorized by the parties' unambiguous, written agreements. [footnote omitted]. . . [Plaintiff Bruch] specifically acknowledged having received a copy of it, having read the entire contract, and having been orally advised of her right to cancel the contract in accordance with the attached notice of cancellation. She signed the provision authorizing recurring monthly payments from her bank/credit card account, she initialed the provision specifically discussing the terms of her annual contract; and she initialed the page which informed her of the early termination option.

838 F.Supp2d at 654. The Court notes that the only EFTA claims the district court dismissed without prejudice were the allegations by two members that at some point their monthly gym dues had been unilaterally increased by $1.00 without the requisite advance notice. There, the district court recognized that a change in this amount might trigger the EFTA's additional notice requirement, but explained the amount was so *de minimus* that the members should allege whether they brought the $1.00 charge to the gym's attention to determine if it were just a simple billing error that could have been easily refunded and remedied. *Id.* at 644

The plaintiffs in *Robins* did not allege a violation of the "anti-waiver" provision, even though the membership agreement in that case contained the identical language complained of here, with members agreeing that re-billing for rejected payments and adding a $20.00 service fee were not "varying charges" that would trigger another written notice.

Another district court addressed the EFTA advance notice requirements in the context of a gym membership agreement, and recognized that additional notices are only needed when an EFT is different from the fees and charges specifically preauthorized in the underlying agreement. In *O'Brien v. Landers*, 2011 WL 221865 (N.D. Ill. Jan. 24, 2011), a gym member agreed to pay monthly dues by auto-debit on the first day of each month. The agreement also authorized the gym, Fitness Formula East Lakeview, to debit the member's account for any extra services incurred the prior month. The member learned after the fact that his account had been debited two extra fees besides the monthly dues: a one time unspecified charge of $15.00, and a second one-time charge of $35.00. The gym debited

1 these extra amounts without execution of a new membership agreement setting forth these
2 amounts or providing the member with an opportunity to terminate his membership
3 agreement before each debit was made. The gym moved to dismiss the case under Rule
4 12(b)(6), Fed.R.Civ.P., for failure to state a claim, claiming the member had agreed in
5 writing that the gym could debit his account "other charges" and increase the membership
6 dues anytime. The district court denied the motion to dismiss, explaining that "Plaintiff has
7 presented facts that, if true, would be sufficient to demonstrate that defendant violated the
8 requirements for preauthorized EFTs established under 15 U.S.C. § 1693e(a), stating:

> The one-time $35 charge was not covered by the plain terms of the original contract. Rather, defendant debited the $35 *in addition* to plaintiff's monthly dues, which were debited on the first day of the month. Neither can the charge fairly be classified as a charge for services of the previous month—a term undoubtedly intended to capture services such as classes, personal trainers, and such. Defendant never told plaintiff why he was being charged, and plaintiff alleges that he received no benefit from the charge. . . Under EFTA regulations, authorization terms must be "clear and readily understandable." Commentary to 12 C.F.R. Pt. 205, Supp. I, ¶ 10(b)(6). Yet the authorization does not inform plaintiff that charges outside of dues and service charges were also contemplated. As such, the charge fell outside the scope of plaintiff's preauthorization. Plaintiff thus states a claim under § 1693m, which confers a private right of action upon consumers against "any person who fails to comply with any provision of this subchapter."

17 *O'Brien*, 2011 WL 221865 at *2.
18 Under similar circumstances, but unrelated to a gym membership, Plaintiffs argument
19 has been rejected by another district court. In *McNair v. Synapse Group, Inc.*, 2009 WL
20 1873582 (D. N.J. June 29, 2009), Synapse, a subsidiary of Time Magazine, sold subscription
21 packages that automatically renewed unless cancelled, often paid for by recurring electronic
22 debit transactions. Plaintiffs alleged that they did not re-authorize any ETFs after their
23 subscriptions automatically renewed, thus the charges violated the 10-day notice requirement
24 of 1693e(b) and the related C.F.R. The District Court of New Jersey rejected the plaintiffs'
25 claim and dismissed the class action for failure to allege that any such charges actually varied
26 from the original preauthorized charges:

> Plaintiffs have submitted no evidence regarding whether the renewal amounts charged by Synapse varied from the amounts authorized by Plaintiffs. Plaintiffs argue that varying amounts are not required under the EFTA,

- 11 -

focusing on the language "which may vary in amount." (See Hearing Tr. 85:19–25.) But, the regulation implementing this statute [quoting Regulation E in full]…. supports Synapse's interpretation—notice is required when the automatic transfer will vary in amount. Plaintiffs cite no law to the contrary.

*Id.,* 2009 WL 1873582, at *13.

**V. Conclusion**

Fitness Alliance is entitled to summary judgment because there is no evidence that Fitness Alliance's recurring EFT membership fees and other charges varied from one amount to another; no evidence that Fitness Alliance debited any fee or other charge not expressly disclosed and preauthorized in the parties' membership agreements; and no evidence that Fitness Alliance's membership agreements waived any right Plaintiffs were conferred, or cause of action created, by the EFTA because the anti-waiver provision is simply not implicated here due the non-varying and specified fees and charges in the parties' membership agreements. Additionally, Plaintiffs' Motion for Summary Judgment is wholly without merit.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment, doc. 31, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Fitness Alliance's Motion for Summary Judgment, doc. 32, is **GRANTED**. The Clerk of Court is kindly directed to enter judgment in favor of Defendant Fitness Alliance, LLC and terminate this action.

**IT IS FURTHER ORDERED** that Defendant Fitness Alliance's request for oral argument, doc. 35 at 1, is **DENIED** as unnecessary.

Dated this 20th day of February, 2013.

Lawrence O. Anderson
United States Magistrate Judge